United States District Court
Southern District of Texas
**ENTERED**
February 04, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA VALERIO ET AL., | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Civil Action No. 1:20-cv-040 |
| | § | |
| NORMA LIMON ET AL., | § | |
| Defendants | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Defendants' "Motion to Dismiss First Amended Complaint for Want of Subject Matter Jurisdiction" (hereinafter, Defendants' "Motion" or "Motion to Dismiss"). Dkt. No. 10. For the reasons provided below, it is recommended that the Court **DENY** Defendants' Motion to Dismiss.

## I. Background

Plaintiffs in this action are Maria De Jesus Valerio ("MJ"), Maria Del Pilar Valerio ("MP"), Maria Del Carmen Valerio ("MC"), Rosalinda Valerio ("Rosalinda"), Alberto Valerio ("Alberto"), and Santiago Valerio ("Santiago"). Dkt. No. 9 at 1. Plaintiffs name as Defendants: (1) Norma Limon ("Limon"), District Director of the United States Citizenship and Immigration Services ("USCIS"); (2) Chad Wolf ("Wolf"), Acting Secretary of the Department of Homeland Security ("DHS"); and, (3) the United States of America. *Id.*

Plaintiffs filed their "First Amended Complaint for Declaratory and Injunctive Relief" (hereinafter, Plaintiffs' "Amended Complaint") on June 16, 2020.  Dkt. No. 9 at 1.[1] They claim that this Court has jurisdiction pursuant to 28 U.S.C. § 1331; the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02; and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-06.  *Id.* at 3, 11.  Pursuant to the APA, Plaintiffs challenge the cancellation of the certificates of citizenship for MJ, MP, MC, Rosalinda, and Alberto.  *Id.* at 11.  They also challenge the denial of the motion to reconsider the denial of Santiago's application for a certificate of citizenship.  *Id.*  Finally, though it is not clear, it appears Plaintiffs might also be attempting to bring APA claims challenging the revocation of MJ and MP's U.S. passports.  *Id.* at 13.[2]  In support of their Amended Complaint, they assert as follows:

1.  MJ, MP, MC, Rosalinda, Alberto, and Santiago are the children of Carlos Valerio Garcia ("Carlos") and Lidia Reyna ("Lidia").  Dkt. No. 9 at 4.  Carlos was born in Hills Prairie, Texas on December 24, 1922.  Lidia was born in Brownsville, Texas on September 29, 1928.  *Id.*  Before moving to Mexico, Carlos lived in the U.S. from 1922 to 1934, and Lidia lived in the U.S. from 1928 to 1930.  *Id.* at 6.  Carlos and Lidia were married in Mexico on June 7, 1943.  MJ, MP, MC, Rosalinda, Alberto, and Santiago were born in Mexico between the years of 1943 and 1959.  Carlos and Lidia moved back to the U.S. in 1957.  They lived in the U.S. until their respective deaths in 1984.  *Id.*

---

[1]  Plaintiffs' Amended Complaint dropped the 8 U.S.C. § 1503 claims that they had asserted in their original complaint.  *Compare* Dkt. No. 1, at 1, 10, *with* Dkt. No. 9 at 1, 10.  Plaintiffs' Amended Complaint also added MC as a Plaintiff.  *See id.*

[2]  As discussed below, it is not clear if Plaintiffs are attempting to bring APA claims challenging the revocation of MJ and MP's passports.  And, if it is their intention to challenge these revocations, they have not sued the correct defendant.  *See Infra* at pgs. 29-31.

2.  Lidia's court-ordered delayed Texas Birth Certificate was registered in Texas on October 18, 1956.  *Id.* at 4.  In or around the year of 1963, the Immigration and Nationalization Service ("INS") conducted an investigation to determine Lidia's place of birth.  *Id.* at 6.  The INS also investigated the citizenship of MJ, MP, Alberto, and Santiago. *Id.* at 7.  In 1965, after reviewing the evidence and interviewing witnesses, the INS concluded that Lidia had been born in Texas.  *Id.* at 2, 6, 9.  On December 15, 1971, the INS granted a certificate of citizenship to MJ.  Subsequently, between the years of 1972 and 1987, the INS granted certificates of citizenship to MP, MC, Rosalinda, and Alberto. *Id.* at 9.  The INS concluded that MJ, MP, MC, Rosalinda, and Alberto had acquired citizenship at birth, as the biological, born-abroad children of two U.S. citizens, "at least one of whom had resided in the United States prior to their birth."  *Id.*

3.  In 2006, the USCIS denied Santiago's application for a certificate of citizenship. *Id.* at 9.  On November 25, 2016, the USCIS denied Santiago's motion to reopen the denial of his application.  *Id.*  The USCIS's denial stated that INS records indicated that Lidia was born in Mexico, and incorrectly referenced information contained in a "Form 1-213" in support of its decision.  *Id.* at 9-10.  The denial also failed to mention other evidence of Lidia's citizenship, including the INS investigation which concluded that Lidia was born in the U.S.  *Id.* at 10.

4.  Thereafter, the USCIS canceled the certificates of citizenship for MJ, MP, MC, Rosalinda.  *Id.* at 10.  The USCIS sent notices of these cancelations on or about September 5, 2019, and did not tell Plaintiffs that the INS had previously determined that Lidia had been born in the U.S.  MJ and MP were "promptly placed in removal proceedings, probably because they had U.S. passports, in order to ensure that they could not file actions under 8 U.S.C. § 1503(a)."  *Id.*  In October of 2019, the Department of State

revoked the U.S. passports of MJ and MP. *Id*. On or about January 27, 2020, the USCIS notified Alberto that it had also canceled his certificate of citizenship.

5.   The USCIS's cancellation of the certificates of citizenship for MJ, MP, MC, Rosalinda, and Alberto were final agency actions within the meaning of the APA. *Id*. at 11-12. The USCIS's denial of the motion to reconsider the denial of Santiago's application for a certificate of citizenship was also a final agency action within the meaning of the APA. *Id*. Under the APA, Plaintiffs are entitled to a review of the cancelations and denials of their certificates of citizenship because the USCIS issued the cancelations and denials "without following the procedures set forth by law and guaranteed by the U.S. Constitution." *Id*. at 12-13. All these actions, along with the revocations of MJ and MP's passports, were arbitrary, capricious, and contrary to law. *Id*.

6.   Pursuant to the DJA, Plaintiffs are entitled to declaratory judgments stating that they are United States citizens. *Id*. at 13. To protect them going forward, they should additionally receive permanent injunctions preventing the USCIS and the Department of State from failing to reissue their certificates of citizenship and denying their applications for passports. Lastly, they should receive attorney's fees, costs, and any other relief that is just and appropriate. *Id*.

Defendants filed their Motion to Dismiss on June 17, 2020. Dkt. No. 10. In brief, Defendants argue that: (1) Plaintiffs do not have a claim under the APA within this Court's jurisdiction; (2) Plaintiffs do not have a claim under the DJA within this Court's jurisdiction; (3) Plaintiffs do not have a claim under 28 U.S.C. § 1331 within this Court's jurisdiction; and (4) Plaintiffs may not obtain injunctive relief because they have failed to state a claim within the jurisdiction of this Court. *Id*. at 4-9. Plaintiffs filed their "Opposition to Motion to Dismiss First Amended Complaint for Declaratory and

Injunctive Relief" (hereinafter, Plaintiffs' "Response") on June 21, 2020.  Dkt. No. 11.

Defendants have not filed a reply.

## II.  Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction[.]"  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  The party asserting jurisdiction "constantly bears the burden of proof" to show that jurisdiction exists.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).  Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a claim for lack of subject matter jurisdiction when it lacks the constitutional or statutory power to adjudicate the claim.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  A court may dismiss an action for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986).

## III.  Discussion

Defendants contend that Plaintiffs have not asserted a claim within the jurisdiction of this Court.  Dkt. No. 10 at 3.  In support of this statement, they claim that: (1) Plaintiffs do not have a cause of action under the APA; (2) the APA, the DJA, and 28 U.S.C. § 1331 do not waive Defendants' sovereign immunity or provide a basis for jurisdiction by themselves; and, (3) the APA, the DJA, and § 1331 do not provide a basis for jurisdiction

in conjunction with each other. *Id.* As discussed below, Defendants are correct in asserting that the APA, DJA, and § 1331 do not waive Defendants' sovereign immunity or provide an independent basis for jurisdiction by themselves. However, in this case, they are not correct in asserting that the APA and § 1331 fail to waive immunity and provide a basis for jurisdiction in conjunction with each other. *See infra* at pgs. 9-10, 29. Accordingly, because Plaintiffs may not proceed with their request for injunctive relief under the DJA without first showing that they have asserted a cause of action under the APA, the Court will begin by addressing Plaintiffs' APA claims.

**A. The APA**. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. In such circumstances, where the plaintiff is not seeking money damages, the APA acts as a waiver of the government's sovereign immunity, allowing the plaintiff to proceed in federal court to rectify agency action. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999). The APA only provides recovery over "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, plaintiffs may not sue under the APA unless: (1) the action they seek to challenge is a final action; and, (2) no alternative, adequate judicial remedy is available to them. *See id*; *Cavazos v. Kerry*, No. 3:15-cv-0661-G, 2016 WL 4126142, at *4 (N.D. Tex. Aug. 3, 2016) (same).

An agency action is considered final under the APA when two requirements are met. *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997); *Villarreal v. Horn*, No. 1:15-CV-111, 2017 WL 6442839, at *7 (S.D. Tex. Sept. 19, 2017). "First, the action must 'mark the consummation of the agency's decisionmaking process,' such that the action is not 'merely

tentative or interlocutory[.]'" *Bennett*, 520 U.S. 154, 177–78 (citations omitted).  Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Id.* (citations omitted).  *See also Texas v. Rettig*, 968 F.3d 402, 413 (5th Cir. 2020) (same); *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505 (5th Cir. 2016) (same).  If a step is an intermediate step in an administrative process, it "cannot be viewed as a 'consummation' of agency decision making."  *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (citations omitted).

Section 704's requirement that there be no alternative, adequate remedy available "reflects Congress'[s] judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'"  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice ("CREW")*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).  The Supreme Court instructs the lower courts to give § 704 a "hospitable interpretation[.]"  *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967).  Courts should not construe it to "defeat the central purpose [of the APA] of providing a broad spectrum of judicial review of agency action[.]"  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (internal quotation marks omitted).

Before finding that a plaintiff may not proceed under the APA due to the presence of an alternative, adequate remedy, a court must have "clear and convincing evidence" that Congress intended to preclude relief under the APA.  *Rusk v. Cort*, 369 U.S. 367, 375 (1962), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  *See also Heckler v. Ringer*, 466 U.S. 602, 644–45 (1984) (Stevens, J., concurring) (same); *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993) (same); *Hinojosa v. Horn*, 896

F.3d 305, 313 (5th Cir. 2018) (same); *CREW*, 846 F.3d at 1244 (same).  In fact, there is a "basic presumption of judicial review" under the APA for persons suffering a legal wrong due to an agency action.  *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, ––– U.S. –––––, 140 S. Ct. 1891, 1905 (2020) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, and 5 U.S.C. § 702).  An agency may rebut that presumption by establishing that other statutes "'preclude'" review,  or that the "'agency action is committed to agency discretion by law.'"  *Id.* (quoting 5 U.S.C. § 701(a)(1) and (2)).  As explained by the Fifth Circuit in *Lundeen v. Mineta*:

> The APA generally provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." [5 U.S.C. § 702].  In granting this entitlement, the statute clearly waives the official immunity of officers of the United States.  [*Id.*]  This certainly qualifies as a waiver of sovereign immunity. The APA expresses a broad exception, however, to its general rule: courts may not review an agency action when the "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." [*Id.*, § 701]. . . . If neither exception applies, subject-matter jurisdiction exists, although it does so under the general federal-question statute, not the APA proper, which "does not create an independent grant of jurisdiction to bring suit." [*Stockma*n, 138 F.3d at 152 n. 13].

291 F.3d 300, 304–05 (5th Cir. 2002) (formatting altered).

When a plaintiff has other adequate remedies, which preclude him from proceeding with a claim under the APA, dismissal under Rule 12(b)(1) is appropriate. *Villarreal v. Horn*, 203 F. Supp. 3d 765, 776 (S.D. Tex. 2016); *De la Garza Gutierrez v. Kerry, et al.*, No. 1:16-cv-00223 (S.D. Tex. Mar. 22, 2017); *Trader Properties, LLC v. United States*, No. G-14-254, 2015 WL 1208983, at *1-2 (S.D. Tex. Mar. 16, 2015). Determining whether an alternative remedy is adequate requires "a case-specific evaluation." *Hinojosa v. Horn*, 896 F.3d 305, 310.

> Several broad principles guide a court's assessment whether an alternative remedy is "adequate." First, although an alternative remedy "need not

provide relief identical to relief under the APA," the relief must nevertheless be of the "same genre"; "doubtful and limited relief" will not suffice. *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quotation omitted). Second, an alternative is not adequate where it requires a person to undergo an "arduous, expensive, and long" process, particularly one that "carr[ies] the risk of serious criminal and civil penalties." U*.S. Army Corps of Eng'rs v. Hawkes Co.*, ––– U.S. ––––, 136 S. Ct. 1807, 1815, 195 L.Ed.2d 77 (2016) (internal quotation marks omitted). Third, the alternative remedy must actually result in a determination of the underlying legal question, rather than a peripheral issue. *See id.* at 1815–16 (rejecting alternative remedy as inadequate where it had "pertinence" only to a peripheral issue and had no bearing on the underlying legal question). And fourth, in order to deem something an adequate remedy, a court must find "clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *CREW*, 846 F.3d at 1244 (internal quotation marks omitted).

*Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 13 (D.D.C. 2020). *See also Bowen v. Massachusetts*, 487 U.S. 879, 901 (holding that an alternative remedy is not adequate under § 704 if the remedy offers only "doubtful and limited relief."); *Hinojosa v. Horn*, 896 F.3d 305, 310 ("The adequacy of the relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the 'same genre' of relief.") (citations omitted).

"[T]he APA does not create an independent grant of jurisdiction to bring suit." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152, n.13 (citing *Califano v. Sanders*, 430 U.S. 99, 107). "If section 702 of the APA creates a cause of action[,]" then "jurisdiction exists under the general federal question statute, not the APA." *Id.* (citing 28 U.S.C. § 1331; *Dunn–McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997)). In that case, the APA "serves as the waiver of sovereign immunity that allows a private party to sue the government" agency. *Id.* (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225). *See also Lundeen v. Mineta*, 291 F.3d 300, 304–05 (noting that, if § 702 of the APA creates a cause of action, not precluded by § 701(a)(1) or (2), then federal question jurisdiction exists under 28 U.S.C. § 1331);

*Cambranis v. Pompeo*, No. 5:19-CV-0238-JKP, 2020 WL 1447380, at \*4–9 (W.D. Tex. Mar. 24, 2020) (noting that the "APA provides a jurisdictional basis for judicial review through 28 U.S.C. § 1331"); *Assadzadeh v. Mueller*, No. CIV.A. 07-2676, 2007 WL 3252771, at \*4 (E.D. Pa. Oct. 31, 2007) ("[T]he APA does not provide an independent jurisdictional basis; rather, jurisdiction over an APA claim arises under the federal question statute, 28 U.S.C. § 1331.") (citations omitted); *Borg-Warner Protective Servs. Corp. v. U.S. E.E.O.C.*, 81 F. Supp. 2d 20, 25 (D.D.C. 2000) ("[J]urisdiction over APA challenges to federal agency action is vested in district courts unless a preclusion of review statute . . . specifically bars judicial review[.] *Robbins v. Reagan*, 780 F.2d 37, 42 (D.C. Cir. 1985)."); Richard H. Seamon, *The Provenance of the Federal Courts Improvement Act of 1982*, 71 Geo. Wash. L. Rev. 543, 598 (2003) ("The district courts' jurisdiction for APA claims typically comes from the federal-question statute, 28 U.S.C. § 1331, in the absence of a more specific grant of subject-matter jurisdiction.").

**(1)  Plaintiffs' APA Claims Regarding Their Certificates of Citizenship.**

Pursuant to APA § 702, MJ, MP, MC, Rosalinda, and Alberto challenge the USCIS's cancellation of their certificates of citizenship.  Additionally, Santiago challenges the USCIS's denial of his motion to reconsider the denial of his application for a certificate of citizenship.  Dkt. No. 9 at 12-13.  Plaintiffs contend that the USCIS's cancellations and denial (hereinafter, "COC decisions") were arbitrary, capricious, and contrary to law and the U.S. Constitution.  *Id.* (stating that the USCIS issued the cancellations and denials "without following the procedures set forth by law and guaranteed by the U.S. Constitution.").  *See also* Dkt. No. 11 at 1-16 (same).  They additionally assert that this Court may review these COC decisions because they constitute final agency actions under the APA.  Dkt. No. 9 at 11-12; Dkt. No. 11 at 11-12.

Defendants argue that the Court lacks jurisdiction to review the USCIS's COC decisions because Plaintiffs have not shown that they have satisfied the APA's exhaustion requirement.  Dkt. No. 10 at 6-7.  Additionally, Defendants contend that Plaintiffs may not proceed under the APA because the COC decisions they are challenging are not "final" agency actions.  *Id.* at 5-6.  Finally, Defendants assert that Plaintiffs may not proceed under the APA because 8 U.S.C. § 1503 provides them with an adequate, alternative remedy.  *Id.* at 5-7.

**(a) Exhaustion**.   As noted above, Defendants argue that the Court lacks jurisdiction to review the USCIS's COC decisions because Plaintiffs have not shown that they have satisfied the APA's exhaustion requirement.  Dkt. No. 10 at 6-7 (citing *Hinojosa v. Horn*, 896 F.3d 305, 310).  With respect to the certificate of citizenship cancellations, Defendants state that MJ, MP, MC, Rosalinda, and Alberto could have, but did not, appeal the cancellations to the USCIS's Administrative Appeals Unit ("AAU").  *Id.* at 7 (citing 8 C.F.R. § 103.3(a), § 342.8, and "[*In Re Respondent Application*], 2012 WL 8503812 (DHS May 14, 2012) (reviewing appeal from the cancellation of a certificate of citizenship); [*In Re Respondent Application*], 2011 WL 7790072 (DHS Jan. 26, 2011) (same)").  Because they did not appeal, Defendants assert that the Court may not review MJ, MP, MC, Rosalinda, and Alberto's APA claims related to the cancellation of their certificates.  Similarly, Defendants assert that Plaintiffs "do not contend that administrative relief was unavailable" to Santiago.  *Id.*  Thus, they claim that the Court may not review the denial of the motion to reconsider the denial of Santiago's application for a certificate of citizenship.  *Id.*

In response, Plaintiffs admit that they did not pursue administrative appeals.  Dkt. No. 11 at 15 ("Defendants correctly note that Plaintiffs did not file administrative

appeals[.]").  However, they state that exhaustion "it is not required for a cause of action under the APA."  *Id*. at 13 (referencing their briefing in Dkt. No. 9 at 11-12).  They argue that an agency decision need only be final, not exhausted, to be reviewable under the APA. *Id*. at 13-15; Dkt. No. 9 at 11-12.

The only case Defendants cite to support their exhaustion argument is *Hinojosa v. Horn*, 896 F.3d 305 (5th Cir. 2018).  *See* Dkt. No. 10 at 7.  In *Hinojosa*, the Fifth Circuit stated that the APA "imposes both finality and exhaustion requirements on the agency action appealed[.]" 896 F.3d 305, 310.  However, the Fifth Circuit did not hold that the appellant, Raquel Hinojosa, failed to satisfy the APA's exhaustion requirement because she failed to appeal to the AAU or seek other administrative remedies.  Instead, it found that Hinojosa could not proceed under the APA because 8 U.S.C. § 1503 provided her with an adequate, alternative remedy.  *Id*. at 309-314.  In reaching this holding, it referenced the APA's exhaustion requirement, finality requirement, and "no other adequate remedy requirement" as separate, independent requirements.  *Id*. at 310 ("Section 704 imposes both finality and exhaustion requirements on the agency action appealed . . . but it also limits the APA to the review of those agency actions which otherwise lack an "adequate remedy in a court."  It is this latter requirement that is before us.") (citations omitted). The Fifth Circuit did not hold that appeal to the AAU was required for exhaustion, and it did not clearly hold that the exhaustion requirement and the "no other adequate remedy requirement" were the same requirement in every context.  *Id*.

Further undermining Defendants' reliance on *Hinojosa* is the fact that the Fifth Circuit did not support its general statement about exhaustion with any authority applicable to Plaintiffs' specific claims here.  Instead, the Fifth Circuit cited § 704 of the APA and §§ 15.3 and 15.11 of the fifth edition of Richard J. Pierce's Administrative Law

Treatise to support its statement that the APA imposes "exhaustion requirements on the agency action appealed[.]"  896 F.3d 305, 310 (citing 5 U.S.C. § 704 and "2 RICHARD J. PIERCE, ADMINISTRATIVE LAW TREATISE §§ 15.3, 15.11 (5th ed. 2010)").  Sections 15.3 and 15.11 of Pierce's Treatise and § 704 of the APA do not support Defendants' exhaustion argument in this case.  As Pierce's Treatise notes, the APA codifies its exhaustion requirements in § 704.  *See* 2 RICHARD J. PIERCE, ADMINISTRATIVE LAW TREATISE § 15.3 at p. 1242.  Section 704 provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.  Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

In § 15.3 of his Treatise, Pierce discusses § 704 and the Supreme Court's interpretation of § 704 in *Darby v. Cisneros*, 509 U.S. 137 (1993).

> By its terms, this provision [§ 704] requires exhaustion of the remedies of "reconsideration" or "appeal to superior agency authority" *only* when a statue or agency rule requires exhaustion of those remedies. . . . In *Darby v. Cisneros*, 509 U.S. 137 (1993), the Court held unanimously that § 704 means what it says.  When an agency takes an otherwise final action, a court cannot require a party aggrieved by that action to exhaust *optional* administrative appeals.  Section 704 authorizes a court to require exhaustion of an available administrative appeal *only* if that remedy is *required* by statute or by agency rule as a prerequisite to the availability of judicial review.

2 RICHARD J. PIERCE, ADMINISTRATIVE LAW TREATISE § 15.3, p. 1242 (emphasis added*).  See also id*., at § 15.11 at p. 1308 (discussing the sometimes overlapping, but analytically distinct, concepts of exhaustion and finality; and, citing *Darby v. Cisneros* for

the proposition that an agency action can be unexhausted but still final and reviewable under the APA).

It "is hornbook law that APA claims are not subject to exhaustion requirements unless specifically required by statute[,]" or agency rule. *Mantena v. Hazuda*, No. 17CV5142, 2018 WL 3745668, at *3–4 (S.D.N.Y. Aug. 7, 2018) (citing *Darby v. Cisneros*, 509 U.S. 137, 154). When the APA applies, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby*, 509 U.S. 137, 154 (emphasis in original). "Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become "final" under § 10(c)." *Id.*[3] *See also Dresser v. Meba Med. & Benefits Plan,* 628 F.3d 705, 710–11 (5th Cir. 2010) (same); *Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008) (same); *United States v. Menendez*, 48 F.3d 1401, 1410–11 (5th Cir. 1995) (same); *AAA Bonding Agency Inc. v. U.S. Dep't of Homeland Sec.*, 447 F. App'x 603, 612 (5th Cir. 2011) (unpublished) (same).

In this case, Defendants cite 8 C.F.R. § 103.3(a) and § 342.8 to support their assertion that Plaintiffs should have appealed their COC decisions before seeking judicial relief. Dkt. No. 10 at 7. Sections 103.3 and 342.8 make it clear that Plaintiffs could have pursued optional appeals with the AAU. *See* 8 C.F.R. § 103.3(a), § 342.8. However, neither § 103.3, nor § 342.8, state that judicial review is conditioned upon appeal to the

---

[3] Section 10(c) of the APA is codified under § 704 of Title 5 of the United States Code. *See Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 290 (5th Cir. 1999) (citing "§ 10(c) of the APA (5 U.S.C. § 704)"); *Bldg. & Const. Trades Dep't, AFL-CIO v. Solis*, 600 F. Supp. 2d 25, 35 (D.D.C. 2009) (referencing "§ 10(c) of the APA, codified as 5 U.S.C. § 704"); *New Mexico Dep't of Labor v. United States Dep't of Labor*, No. CV 03-420 WJ/RLP, 2004 WL 7338206, at *2 (D.N.M. Jan. 12, 2004) ("Congress effectively codified the doctrine of exhaustion of administrative remedies in § 10(c) [5 U.S.C. § 704].").

AAU, or any other form of exhaustion. *Id. See also Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1237 (D. Ariz. 2016) ("The government also argues that agency regulations, 8 C.F.R. § 103.3(a)(1)(i)-(iv), make exhaustion a prerequisite . . . . Far from it.  The regulations simply make an administrative appeals process available.  The language is explicitly permissive, not mandatory.")[4]

Defendants have not pointed to any other agency rule or statute requiring Plaintiffs to appeal their COC decisions to the AAU before seeking judicial review under the APA. Defendants have also failed to cite any on-point case authority to support their argument. *Hinojosa v. Horn* did not involve the COC decisions at issue here, and its holdings do not support Defendants' argument.  Moreover, *Hinojosa's* citation to § 704 of the APA and Richard J. Pierce's Administrative Law Treatise contradict, rather than support, a finding that exhaustion of optional appeals is required before judicial review may be sought under the APA.

This Court has found no other authority requiring dismissal on exhaustion grounds.  In the unpublished case of *Villarreal v. Horn*, the Fifth Circuit cited *Hinojosa v. Horn* to support its holding that a passport applicant could not proceed under the APA due to her failure to satisfy the APA's exhaustion requirement.  802 F. App'x 107, 108-09 (5th Cir. 2020) (unpublished).  But, the Fifth Circuit did not state that Villarreal failed to exhaust her APA remedies because she had failed to appeal to the AAU or pursue other administrative remedies.  Instead, it held that Villarreal must pursue an action under 8

---

[4]  Defendants also make a vague reference to "section 1453(a)" and state that nothing in this section "precludes an administrative appeal of a certificate cancellation."  Dkt. No. 10 at 7.  Section 1453 of Title 8 of the United States Code does not preclude an administrative appeal of a certificate cancellation.  *See* 8 U.S.C. § 1453 ("Cancellation of certificates issued by Attorney General, the Commissioner or a Deputy Commissioner; action not to affect citizenship status").  However, § 1453 also does not state that judicial review is conditioned upon appeal to the AAU, or any other form of exhaustion.

U.S.C. § 1503 before filing suit under the APA. In reaching this holding, the court cites *Hinojosa v. Horn* for the proposition that satisfying the APA's exhaustion requirement requires suing under § 1503. *Villarreal v. Horn*, 802 F. App'x 107, 109. That is to say, in Villarreal's case, the court appears to treat the exhaustion requirement and the "no other adequate remedy requirement" as the same requirement. *Id.*

> We are left only with Maria Villarreal's claims under the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 704. The district court dismissed her claims because the APA requires that plaintiffs exhaust other "adequate remed[ies]" prior to filing an APA claim. *Id.*; *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018). And Maria did not exhaust.
>
> Congress has provided "specific procedures to appeal the denial of a right or privilege as a national of the United States" in 8 U.S.C. § 1503. These procedures apply to passport denials. *Hinojosa*, 896 F.3d at 312. There are two options to seek a remedy under § 1503: (1) if an individual is within the United States, she may seek a judicial declaration of citizenship; or (2) if an individual is outside the United States, she may apply for a certificate of identity from a diplomatic or consular officer, which would allow her to "travel[ ] to a port of entry in the United States and [then] apply[ ] for admission." 8 U.S.C. § 1503(a)–(c); *Hinojosa*, 896 F.3d at 312. This Court has previously held that if a plaintiff *fails to exhaust these procedures*, then the plaintiff fails to meet *the APA's exhaustion requirement*. *Hinojosa* 896 F.3d at 313. Since Maria has not exhausted, the district court rightly dismissed her claim.

*Id.* at 109 (emphasis added).

Regardless of whether *Villarreal v. Horn* correctly applied *Hinojosa*, *Villarreal* is not precedent, and it does not require a finding that Plaintiffs were required to exhaust optional appeals to the AAU before seeking judicial review under the APA. Accordingly, for the all the foregoing reasons, it is recommended that the Court deny Defendants' argument for dismissal on exhaustion grounds. *See Darby*, 509 U.S. 137, 154 (opining that, when the APA applies, "an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that

review.") (citations omitted); *Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 710–11 (same); *United States v. Menendez*, 48 F.3d 1401, 1410–11 (same); *AAA Bonding Agency Inc. v. U.S. Dep't of Homeland Sec.*, 447 F. App'x 603, 612 (same); *Sharkey v. Quarantillo*, 541 F.3d 75 (same); *L. Xia v. Tillerson*, 865 F.3d 643, 656–58 (D.C. Cir. 2017) ("[T]he APA requires exhaustion of administrative remedies "only when expressly required by statute or . . . an agency rule. . . .  The government . . . points to no statute or rule requiring exhaustion in this case.") (citing *Darby*, 509 U.S. 137, 154); *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1239, n. 4)("In APA cases, however, the statutory text explicitly excludes exhaustion, and courts may not infer higher agency review as a requirement of judicial review.") (citing *Darby*, 509 U.S. 137, 147).

**(b) Finality.**  Defendants additionally argue that Plaintiffs may not proceed under the APA because the COC decisions they are challenging are not "final" agency actions. Dkt. No. 10 at 5-6.  In support of this argument, Defendants suggest that the COC decisions were not final because Plaintiffs did not appeal them to the AAU.  Defendants cite no authority to support their assertion that Plaintiffs' COC decisions have not become final due to their failure to pursue optional administrative appeals.  *Id*.  This may be because Defendants have mistaken finality for exhaustion.  *See Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1234 ("The government argues there was no 'final administrative denial' here because Plaintiffs never appealed the denial of their citizenship applications to the [AAU] of USCIS.  This argument mistakes finality for exhaustion, a confusion common in judicial discussions of this and other statutes.").

When finality is not defined by an applicable statute, the "more general doctrine of finality in administrative agency law" applies.  *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, at 1235 (citations omitted).  In *Bennett v. Spear*, the Supreme Court noted that an

agency action is considered final under the APA when two requirements are met. *Id.* (citing *Bennett v. Spear* 520 U.S. 154, 177–78); *Villarreal v. Horn*, No. 1:15-CV-111, 2017 WL 6442839, at *7 (same). "First, the action must 'mark the consummation of the agency's decisionmaking process,' such that the action is not 'merely tentative or interlocutory[.]'" *Bennett*, 520 U.S. 154, 177–78 (citations omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Id.* (citations omitted). *See also Texas v. Rettig*, 968 F.3d 402, 413 (same); *Ponce-Osorio v. Johnson*, 824 F.3d 502, 505 (same). If a step is an intermediate step in an administrative process, it "cannot be viewed as a 'consummation' of agency decision making." *Qureshi v. Holder*, 663 F.3d 778, 781 (citations omitted).

In *Ortega-Morales v. Lynch*, the court applied *Bennett v. Spear's* definition of administrative finality to the USCIS's decision to deny the certificate of citizenship applications of Florina and Marcela Ortega-Morales. 168 F. Supp. 3d 1228, 1235–36. Pursuant to this definition, the court held that the USCIS's decision became final "no later than when the opportunity for higher agency review had passed." *Id.* at 1235.

> Under [the *Bennett v. Spear's*] definition, USCIS Field Office Director John M. Ramirez's decision to deny Plaintiffs' citizenship applications became final no later than when the opportunity for higher agency review had passed. The decision "determined rights or obligations" of American citizenship. And it marked the "consummation" of USCIS' decision-making process, as evident from the letter USCIS sent to Plaintiffs. (Doc. 14-1 at 5, 11.) The letter began with the prominent heading "DECISION". (*Id.* (emphasis in original).) It then stated, in no uncertain terms: "Upon consideration, it is ordered that the [citizenship application] is denied. . . ." (*Id.*) Lest there be any doubt, the letter gave an administrative appeal deadline of 30 days later and stated: "If no appeal is filed within the time allowed, then this decision is final." (*Id.*) When no further administrative appeal was filed within 30 days, the decision then became final.

*Id.* at 1235-36.

In the present case, the USCIS denied Santiago's motion to reopen the denial of his application for a certificate of citizenship on November 25, 2016.  Dkt. No. 2-1 at 86-87. The language of the denial makes clear that the denial was unequivocal and definite, not tentative, or interlocutory.  It also marked the consummation of the USCIS's decision-making process because it reached a conclusion after discussing the factors and evidence the USCIS deemed relevant.  It determined Santiago's rights by denying him the rights of citizenship, and its legal consequences flowed immediately by, among other things, preventing him from entering or leaving this country as a U.S. citizen would.  *Id*.  The denial also stated that Santiago had 30 calendar days to appeal if he disagreed with the "decision."  *Id*. at 87.

The USCIS canceled MJ, MP, and MC's certificates of citizenship on September 5, 2019.   Dkt. No. 2-1 at 94-95, 98-99, 104-105.   The USCIS canceled Rosalinda and Alberto's certificates of citizenship on January 27, 2020.  *Id*. at 102-103, 106-107.  The language of each of these cancellations revealed that the cancellations were unequivocal and definite, not tentative, or interlocutory.   They also marked the consummation of the USCIS's decision-making process because they reached their conclusions after discussing the factors and evidence the USCIS deemed relevant.  They determined MJ, MP, MC, Rosalinda, and Alberto's rights by denying them the rights of citizenship.  Legal consequences flowed immediately from the cancellations by, among other things, preventing these siblings from entering or leaving this country as U.S. citizens would.  *Id*.

Under *Bennett v. Spear's* definition of administrative finality, these COC decisions qualify as final decisions under the APA.  *See Bennett v. Spear,* 520 U.S. 154, 177–78; *Ortega-Morales v. Lynch*, 168 F. Supp. 3d 1228, 1235–36.  As Defendants have provided

no authority to the contrary, it is recommended that the Court deny Defendants'
argument for dismissal on the grounds that the COC decisions are not final.

   **(c) Adequate, Alternative Remedy**.  In their final attempt to defeat Plaintiff's
COC decision claims, Defendants argue that Plaintiffs may not proceed under the APA
because 8 U.S.C. § 1503(a) provides them with an adequate, alternative remedy.  Dkt. No.
10 at 5-7.  In support of this argument, Defendants cite to cases involving passport denials
or revocations.  *Id*. at 6 ("This and other federal courts also repeatedly held that, in the
context of a passport denial or revocation, a declaration of citizenship under 8 U.S.C.
1503(a) is an adequate remedy which forecloses concurrent relief through the APA.").
However, Defendants have cited no Supreme Court or Fifth Circuit authority holding that
the APA is unavailable in circumstances like those presented here due to the availability
of an adequate, alternative § 1503(a) remedy.  Further, Defendants provide no facts or
analysis to support their claim that the remedies provided by § 1503(a) are adequate.  *Id*.

   Plaintiffs assert that § 1503(a) does not provide them with an alternative, adequate
remedy.  Dkt. No. 11 at 1-13, 15-16.  Due to the egregious errors made by the USCIS,
Plaintiffs contend that it will not be difficult to meet their burden under the APA.  *Id*.  "By
contrast," however, Plaintiffs indicate that it will be unduly burdensome to satisfy the
evidentiary requirements of § 1503(a).  *Id*. at 7.  Under § 1503(a), they will have to prove
"*de novo*, by a preponderance of the evidence" that Lidia was born in the U.S. when she,
Carlos, and all other witnesses "are long deceased[.]"  *Id*.  Thus, because relief under
§ 1503(a) is doubtful, Plaintiffs indicate that the remedy afforded to them by § 1503(a) is
a remedy on paper only.  *Id*.

   Plaintiffs identify the egregious errors the USCIS made in issuing the COC
decisions as follows:

(1)   The USCIS ignored the INS's exhaustive investigation which determined, in 1965, that their mother Lidia had been born in the U.S.  Dkt. No. 9 at 2; Dkt. No. 11 at 1.  In fact, the USCIS did not acknowledge that the INS's investigation and determination had occurred in the first instance.  Dkt. No. 11 at 5, 15.

(2)   The USCIS ignored the evidence and witness testimony that supported the INS's determination that Lidia had been born in the U.S.  Dkt. No. 11 at 5, 7-11, 15.

(3)   The USCIS failed to consider that Plaintiffs had relied upon the INS's determination to their detriment.  For example, the USCIS failed to consider that, due to the INS's favorable determination, Plaintiffs did not, and had no reason to, fully document the evidence and testimony of witnesses supporting the INS's determination while the witnesses were still alive.  Dkt. No. 11 at 3-4.  Further, except for Santiago, Plaintiffs have had certificates of citizenship, and relied upon all the benefits afforded by such certificates, for more than 30 years.  Dkt. No. 9 at 10.

(4)   The USCIS did not rely upon any new evidence when concluding that Lidia had not been born in the U.S.  Dkt. No. 9 at 2; Dkt. No. 11 at 1.  Instead, the USCIS "relied on only two documents" that the INS had already considered and discounted in 1965.  Dkt. No. 11 at 3.[5]  In doing so, the USCIS overturned the INS's determination "*sub silentio,*" without the required reasoned analysis and without any credible evidence that Plaintiffs are not citizens.  Dkt. No. 11 at 13, 15.

In committing these errors, Plaintiffs state that the USCIS failed to follow "the procedures set forth by law and guaranteed by the U.S. Constitution."  Dkt. No. 9 at 12-13.  In support of this argument, Plaintiffs cite the Supreme Court's recent opinion in *Dep't of Homeland Sec. v. Regents of Univ. of Cal. ("Regents")*, ––– U.S. ––––, 140 S. Ct. 1891, 207 L.Ed.2d 353 (2020).  Dkt. No. 11 at 2-4.  In *Regents*, the Supreme Court

---

[5] Specifically, Plaintiffs state that the INS considered and discounted Lidia's non-immigrant visa and her Mexican birth certificate.  According to the documents contained in the INS's file, the Mexican birth certificate contained incorrect information and had been filed during Lidia's infancy, by someone other than her parents, so that she could get baptized.  Dkt. No. 11 at 3, 9-11.  Further, Lidia applied for a non-immigrant visa, in part, because she was confused.  As she had not been aware of the Mexican birth certificate, its surfacing during her attempts to reenter confounded her.  Wishing to avoid an investigation by the INS, she applied for the visa so that she would not be prevented from joining her husband in the U.S.  *Id.  See also* Dkt. No. 2-1 at 26, 33.

found that the DHS violated the APA when it acted arbitrarily and capriciously in attempting to rescind the Deferred Action for Childhood Arrivals ("DACA") program. *Regents*, 140 S. Ct. 1891, 1896-1913.  Plaintiffs contend that the errors at issue in *Regents* are like the above-listed errors made by the USCIS.  Dkt. No. 11 at 2-4.

 For example, Plaintiffs note that the *Regents* Court held that DHS acted arbitrarily and capriciously when it "failed to address whether there was 'legitimate reliance'" on the DACA program.  Dkt. No. 11 at 3 (citing *Regents*, 140 S. Ct. 1891, 1913 and *Smiley v. Citibank (South Dakota), N. A.*, 517 U.S. 735, 742 (1996)).  The Supreme Court noted that, "[w]hen an agency changes course, as DHS did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account. . . . It would be arbitrary and capricious to ignore such matters."  *Regents*, 140 S. Ct. 1891, 1913 (internal quotations and citations omitted).  Similarly, Plaintiffs cite to the Supreme Court's holding that DHS acted arbitrarily and capriciously when it attempted to justify its change of position, not with a new administrative action, but with "post hoc rationalizations" that "failed to supply the requisite 'reasoned analysis.'"  Dkt. No. 11 at 2-3 (citing *Regents*, 140 S. Ct. 1891, 1896; *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), and *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983)).  The Supreme Court explained that if an agency does not take a new administrative action, and comply with all rules and procedures for such an action, then it is limited to defending its action based "on the reasons it gave when it acted."  *Regents*, 140 S. Ct. 1891, 1909.  Plaintiffs argue that, here too, the USCIS acted arbitrarily and capriciously when it reversed its decision regarding Lidia's birthplace without: (1) receiving new evidence or taking a new administrative action; (2) accounting for Plaintiffs' reliance on the INS's prior decision; (3) acknowledging the INS's prior

decision, or otherwise providing a reasoned analysis for the reversal of its decision.  Dkt. No. 11 at 2-4.

Plaintiffs state that, in light of the USCIS's illegal, unconstitutional errors, and the Supreme Court's holdings in *Regents*, their right to relief under the APA is clear.  Dkt. No. 11 at 3.  More to the point, because § 1503(a) does not provide them with an adequate remedy, Plaintiffs contend that they have a guaranteed right to *judicial review* under the APA.  *Id.* at 6, 16 (citing *Rusk v. Cort*, 369 U.S. 367, at 375 for the proposition that the APA "confers the right to judicial review of any agency action[;]" and citing § 702 for the proposition that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.") (emphasis and internal citations omitted).  Pursuant to the Supreme Court's opinion in *Rusk v. Cort*, Plaintiffs argue that the language of § 1503 is permissive, rather than mandatory.  *Id.* at 16 (noting that § 1503(a) states only that aggrieved persons "*may* institute an action" under the statute) (emphasis added).  Therefore, Plaintiffs insist that they cannot be forced to proceed under § 1503 when the remedy provided by that statute is inadequate.  *Id.*

> [U]nder the APA, the question is whether it was arbitrary or capricious to revoke (or deny) Certificates of Citizenship which were issued (or requested) on the basis of the evidence adduced and findings of fact reached in a comprehensive investigation conducted 55-60 years ago, when the witnesses were alive and available, *without considering* such evidence and findings of fact.  That is *judicial review* of those actions, and merely posing the question is sufficient to predict the answer.  Clearly, it was arbitrary and capricious.
>
> By contrast, § 1503(a) is a *de novo* proceeding, in which none of the above considerations is relevant. It requires Plaintiffs to produce sufficient evidence, in 2020, (when all the witnesses are long deceased, and Plaintiffs had relied on INS' finding, to their detriment), to prove, *de novo*, by a preponderance of the evidence, that their mother was born in Texas.  Under *Rusk v. Cort*, [369 U.S. 367, 375 (1962)], that is *not judicial review*.

*Id.* at 7 (emphasis and errors in original).

Finally, Plaintiffs note that, when determining whether § 1503(a) provides an adequate remedy, *Hinojosa v. Horn* requires the Court to conduct a "case-specific analysis[.]" Dkt. No. 11 at 15. This requires the Court to look "specifically at the party seeking relief and *its particular claim*." *Id.* at 16 (quoting *Hinojosa*, 896 F.3d at 311, emphasis added by Plaintiffs). Plaintiffs note that Defendants have provided no analysis specific to this case. Instead, they have cited cases that are neither on-point, nor in keeping with *Hinojosa*'s case-specific analysis requirement. *Id.* at 4-5, 16.

With respect to *Hinojosa*'s case-specific analysis requirement, Plaintiffs are correct. In *Hinojosa*, the court noted that:

> At a minimum, the alternative remedy must provide the petitioner "specific procedures" by which the agency action can receive judicial review or some equivalent. . . . This requirement entails a case-specific evaluation. For example, the Supreme Court in *Bowen v. Massachusetts* analyzed whether review by the Claims Court was an adequate alternative remedy, when the petitioner, the Commonwealth of Massachusetts, sought review of an agency determination denying Medicaid expense reimbursement. 487 U.S. at 904–08, 108 S.Ct. 2722. Finding this review inadequate, the Supreme Court noted that the Claims Court could not grant equitable relief, which might be necessary to remedy the state's alleged harm, and that the Claims Court might not have jurisdiction for similar claims brought by other states. *Id.* The Court's conclusion regarding adequacy, in other words, was based on the facts of the case—looking specifically at the party seeking relief and its particular claim. *See Consol. Edison Co. of N.Y., Inc. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1384 (Fed. Cir. 2001) ("In *Bowen*, the Supreme Court linked its judgment to a specific set of circumstances that are not present in this case.").

*Hinojosa v. Horn*, 896 F.3d 305, 310–11 (formatting altered). As noted above, Defendants have provided no facts or analysis to support their claim that the remedies provided by § 1503(a) are adequate. Dkt. No. 10 at 6. Instead, they cite only to cases involving passport denials or revocations. *Id.* ("This and other federal courts also repeatedly held that, in the context of a passport denial or revocation, a declaration of

citizenship under 8 U.S.C. 1503(a) is an adequate remedy which forecloses concurrent relief through the APA.") (errors in original).  Defendants have not shown that the holdings of these cases are applicable here; and, the Fifth Circuit's opinion in *Hinojosa v. Horn* suggests that they are not.  *See Hinojosa*, 896 F.3d 305, 313 ("Both the *Rusk plaintiff and his claim for relief differ substantially* from the Plaintiffs and their claims here.  Accordingly, the Court's case-specific application of the adequacy requirement to § 1503 [in *Rusk*] has no bearing on our current review.") (emphasis added).[6]

Plaintiffs, on the other hand, have pointed to specific evidence and court holdings indicating that § 1503(a) will not provide them with an adequate remedy.  *See* Dkt. No. 2-1 at 2-110; Dkt. No. 9 at 2-11, Dkt. No. 11 at 1-11, 13-16.  At a minimum, Plaintiffs have shown that any relief they might receive under § 1503 is "doubtful" because all those who could rebut the USCIS's COC decisions by providing testimony and evidence regarding Lidia's birth are now deceased.  *See Bowen v. Massachusetts*, 487 U.S. 879, 901 (holding that an alternative remedy is not adequate under § 704 if the remedy is "doubtful").  *See also De La Garza Gutierrez v. Pompeo*, 741 F. App'x 994, 998 (5th Cir. 2018) ("[A] plaintiff need not pursue a remedy whose existence is 'doubtful' or 'uncertain.'  Nor is the plaintiff required to run the risk of enforcement proceedings or pursue an 'arduous, expensive, and long' permitting process to seek review of an already-final agency action.") (citations omitted) (unpublished).

---

[6] In *Hinojosa*, the court took care to distinguishing the successful claims brought in *Rusk v Cort*, and, apparently, Rusk himself, from the unsuccessful claims and plaintiffs before it.  *See Hinojosa*, 896 F.3d 305, 313-314 (contrasting the claims of Rusk, a criminally indicted "native" living in Germany who had lost his U.S. citizenship as a result of allegedly dodging the draft, with the claims of Hinojosa and another Hispanic woman who were stripped of, and denied, passports despite their alleged U.S. citizenship).

Further, Defendants have not provided "clear and convincing evidence" that Congress intended "to create a special, alternative remedy" for Plaintiffs' APA COC decision claims and "thereby bar APA review*." CREW*, 846 F.3d at 1244 (internal quotation marks omitted).  *See also Hinojosa*, 896 F.3d 305, 313 (noting "the basic proposition that Congress must clearly express an intent to preclude the citizen's right to seek judicial redress for violations of his rights by agency action under the APA.") (citing *Rusk*, 369 U.S. 367, 379–80; *Heckler v. Ringer*, 466 U.S. 602, 644–45; and *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64, internal quotations omitted).

This is not surprising.  As Plaintiffs point out (Dkt. No. 11 at 16), the permissive rather than mandatory language of § 1503(a) suggests that Congress did not intend § 1503(a) to be an exclusive remedy in this context.  *See* 8 U.S.C. § 1503(a) ("If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person *may* institute an action . . .") (emphasis added).   In *Rusk v. Cort*, the Supreme Court interpreted the similarly permissive language of §§ 1503(b) and (c),[7] finding that Rusk could proceed under the APA because Congress had not intended § 1503(b) and (c) to be exclusive remedies.  *Rusk v. Cort*, 369 U.S. 367, 379.  Sections § 1503(b) and (c) apply to persons seeking to establish citizenship from outside the U.S., whereas § 1503(a) applies to persons seeking to establish their citizenship from within the U.S.  *See* 8 U.S.C. §§ 1503(a)-(c).  Like §§ 1503(b) and (c), § 1503(a) states that aggrieved parties "may" seek

---

[7] The *Rusk* court interpreted "subsections (b) and (c) of § 360 of the Immigration and Nationality Act of 1952."  *Rusk*, 369 U.S. 367, 373.  Subsections (b) and (c) of § 360 are now codified as subsections (b) and (c) of § 1503.  *Hinojosa v. Horn*, No. CV B-16-10, 2016 WL 7912013, at *8 n.7 (S.D. Tex. Sept. 9, 2016), *report and recommendation adopted*, No. 1:16-CV-00010, 2017 WL 281753 (S.D. Tex. Jan. 20, 2017), *aff'd*, 896 F.3d 305 (5th Cir. 2018).

relief pursuant to § 1503, it does not state that they may only seek relief pursuant to § 1503. *Compare* 8 U.S.C. § 1503(a), *with* 8 U.S.C. § 1503(b) and (c).

Though *Rusk* was abrogated on other grounds by *Califano v. Sanders*, it "remains good law with respect to its interpretation of § 1503(b)-(c)." *Hinojosa*, 896 F.3d 305, 319 (Dennis, J., dissenting). As Judge James L. Dennis explained in his dissent in *Hinojosa v. Horn*, even though the *Hinojosa* majority choose to distinguish *Rusk*, and cast doubt on it in dicta,[8] nothing has disturbed the holdings of *Rusk* which were not abrogated by *Califano v. Sanders. Id.* at 319-320.

> [I]n my view, *Rusk v. Cort*, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), remains good law with respect to its interpretation of § 1503(b)-(c). Nothing in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), or any subsequent Supreme Court case, suggests otherwise. In *Califano*, the Supreme Court considered whether the courts had jurisdiction under the APA to review a social security benefits decision by the Secretary of Health, Education, and Welfare. *Id.* at 100–01, 97 S.Ct. 980. The *Califano* Court held that, following Congress's decision to amend 28 U.S.C.

---

[8]  In relevant part, the majority stated:

> First, it is unclear to what degree that *Rusk* remains good law in light of *Califano*. *Rusk* construed the APA as a jurisdiction-conferring statute, 369 U.S. at 370–72, 82 S.Ct. 787, an assertion that was expressly rejected in *Califano*, 430 U.S. at 105, 97 S.Ct. 980. It is unclear whether this fundamental transformation of the APA's purpose would alter *Rusk's* analysis. Second, the *Rusk* Court never explicitly discusses the adequacy requirement of the APA, and *Rusk* has rarely been relied on by either the Supreme Court or this Court when discussing it. When *Rusk* has been cited, it is usually for the basic proposition that Congress must clearly express an intent to "preclude the citizen's right to seek judicial redress for violations of his rights" by agency action under the APA. *E.g., Heckler v. Ringer*, 466 U.S. 602, 644–45, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (Stevens, J., concurring); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). As noted, the Supreme Court significantly developed and expanded the adequacy requirement since *Bowen*. It is thus unclear whether and to what extent *Rusk* is or remains an instructive account of the adequacy requirement. We need not resolve these issues, however, because *Rusk's* holding is inapplicable to the present cases. Both the Rusk plaintiff and his claim for relief differ substantially from the Plaintiffs and their claims here. Accordingly, the Court's case-specific application of the adequacy requirement to § 1503 has no bearing on our current review.

*Hinojosa*, 896 F.3d 305, 313 (formatting altered).

§ 1331 and eliminate its amount-in-controversy requirement in certain cases, the APA could no longer be interpreted as an independent grant of subject matter jurisdiction. *Id.* at 105, 97 S.Ct. 980.

Hinojosa and Villafranca do not argue that the APA independently confers subject matter jurisdiction. Instead, they assert jurisdiction under § 1331 and look to the APA to provide a cause of action and waiver of sovereign immunity. *See Bowen*, 487 U.S. at 891, 108 S.Ct. 2722 (considering whether review was proper under the APA with jurisdiction asserted under § 1331). Because *Califano's* reference to *Rusk* was confined to the issue of whether the APA confers subject matter jurisdiction, *Rusk's* construction of § 1503 remains good law.

*Id.* (footnote omitted). *See also Chacoty v. Pompeo*, 392 F. Supp. 3d 1, 9–12 (D.D.C. 2019) (critiquing *Hinojosa v. Horn*, providing a lengthy history of relevant authority, and finding that the non-abrogated portions of *Rusk* remain binding law); *Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 14–16 (same). *But see S.T. ex rel. Trivedi v. Napolitano*, No. CIV.A. H-12-285, 2012 WL 6048222, at *4–5 (S.D. Tex. Dec. 5, 2012) (finding that, because § 1503 provided an adequate, alternative remedy for the plaintiff, his APA challenge to the denial of an application for a certificate of citizenship was subject to dismissal for lack of jurisdiction).[9]

---

[9] The court in *S.T. ex rel. Trivedi v. Napolitano* did not mention *Rusk v. Cort*. In fact, its discussion of the plaintiff's APA claim was limited to the following analysis:

> Review of agency action under the APA is precluded under 5 U.S.C. § 704 because the relief that S.T. seeks—a judicial declaration of citizenship and resulting entitlement to a passport and social security card—may be directly sought through 8 U.S.C. § 1503(a). *See Sanchez v. Clinton*, 2012 WL 208565, at *5 (S.D.Tex. Jan.24, 2012); *Villegas v. Clinton*, 2010 WL 5387553, at *9 (S.D.Tex. Dec.20, 2010) (same). . . . S.T. argues that no alternate "adequate remedy" to the APA is clearly available because the defendants have not conceded the validity of any of his claims. (Docket Entry No. 34, ¶ 8). This argument lacks merit. The defendants have answered S.T.'s § 1503 and RFRA claims and do not seek to dismiss them.

*S.T. ex rel. Trivedi v. Napolitano*, No. CIV.A. H-12-285, 2012 WL 6048222, at *4 (formatting altered).

Accordingly, Defendants have not shown that this Court lacks jurisdiction over Plaintiffs' APA COC decisions claims; their exhaustion, finality, and alternative-adequate remedy arguments fail for the reasons provided above.  Thus, because Plaintiffs have stated a claim for the violation of their rights under the APA, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 152 n.13 (noting that, if § 702 of the APA creates a cause of action, then federal question jurisdiction exists under 28 U.S.C. § 1331); *Lundeen v. Mineta*, 291 F.3d 300, 304–05 (same); *Cambranis v. Pompeo*, No. 5:19-CV-0238-JKP, 2020 WL 1447380, at *4–9 (same); *Assadzadeh v. Mueller*, No. CIV.A. 07-2676, 2007 WL 3252771, at *4 (same); *Borg-Warner Protective Servs. Corp. v. U.S. E.E.O.C.*, 81 F. Supp. 2d 20, 25 (same); Richard H. Seamon, *The Provenance of the Federal Courts Improvement Act of 1982*, 71 Geo. Wash. L. Rev. 543, 598 (same).[10]

**(2) Plaintiffs' Ostensible APA Claims Regarding the Passports of MJ and MP**.  Based upon certain language in Plaintiffs' Amended Complaint, it appears Plaintiffs may be attempting to assert APA claims contesting the Department of State's revocation of MJ and MP's passports.  Dkt. No. 9 at 10, 13 (stating the Department of State's revocation of MJ and MP's passports was arbitrary and capricious).  However, upon closer inspection, it is not clear that Plaintiffs intend to bring such claims.  Plaintiffs have not sued the Department of State, or its chief officer, the Secretary of State.  *Id.* at 1,

---

[10]   Because Plaintiffs have shown that this Court possesses federal question subject matter jurisdiction, it need not address Defendants' arguments that the DJA and § 1331 do not provide jurisdiction in conjunction with each other.  *See* Dkt. No. 10 at 4.  Though, Defendants are correct in this assertion.  *See Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) ("The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present."); *Obiri v. Holder*, No. CIV.A. H-10-208, 2011 WL 1157471, at *1, n. 2 (S.D. Tex. Mar. 24, 2011) (noting that the DJA does not provide an independent ground for jurisdiction by itself or in conjunction with § 1331).

4.  *See also* Dkt. No. 10 at 2 (containing Defendants' note that Plaintiffs' Amended Complaint does "not include the United States Department of State as a party defendant, despite alleging some Plaintiffs' U.S. passport revocations in 2019."). Plaintiffs have not stated or shown that the Defendants named in this lawsuit have revoked MJ and MP's passports. *See generally* Dkt. Nos. 9 and 11. The single document they have submitted which evidences the revocation of MJ's passport reveals that the Department of State revoked her passport, not the named Defendants. Dkt. No. 2-1 at 96-97. And, Plaintiffs have not submitted any documents to evidence the revocation of MP's passport. *See* Dkt. No. 2-1 at 1-110 (containing exhibits 1-15, none of which evidence the revocation of MP's passport).

Further, neither Plaintiffs' Amended Complaint, nor their Response to Defendants' Motion to Dismiss, clearly plead an APA cause of action against the Department of State. *See generally* Dkt. No. 9 and 11. In fact, Plaintiffs' Response does not mention the passport revocations, and Plaintiffs' Amended Complaint does nothing beyond stating that the revocations were arbitrary and capricious. *Id.* Plaintiffs' Response also identifies their "cause of action" as pertaining only to their APA COC decision claims. *Id.* at 11 ("As their cause of action, Plaintiffs alleged that the cancellation of the Certificates of Citizenship of Plaintiffs Maria Del Pilar Valerio, Maria De Jesus Valerio, Maria Del Carmen Valerio, Rosalinda Valerio, and Alberto Valerio and the denial of the motion to reconsider the denial of Santiago Valerio's application for a Certificate of Citizenship were final agency actions, under 5 U.S.C. §704[.]"). Thus, rather than attempting to state separate APA passport revocation claims, Plaintiffs might only be intending to emphasize

that the COC decisions have also harmed them by leading to the arbitrary and capricious revocations of MJ and MP's passports.[11]

Accordingly, at this juncture, it is not efficacious to analyze Plaintiffs' ostensible APA passport revocation claims.  Conducting the fact-intensive, case-specific analysis required under *Hinojosa v. Horn*,[12] is neither necessary nor efficient when it is not clear that Plaintiffs intended to bring these claims in the first instance.  It is also not efficacious to conduct this fact-intensive, case-specific analysis when Plaintiffs have failed to sue the proper defendant, and thus have failed to state a claim.  Further, as the named Defendants did not revoke the passports at issue, it is not for them to raise the Department of State's arguments and defenses.

For these reasons, and because Defendants have not moved to dismiss Plaintiffs' ostensible APA passport revocation claims pursuant to Rule 12(b)(6), it is recommended that the Court deny Defendants' Motion to Dismiss in its entirety.  *See Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016) (noting that "the question of whether a plaintiff has sued the correct defendant" is a merits issue, addressed under Rule 12(b)(6), not a jurisdictional issue addressed under Rule 12(b)(1)); *Davis v. Brennan*, No. 3:17-CV-3347-N-BH, 2018 WL 3626344, at *2 (N.D. Tex. June 15, 2018), *report and recommendation adopted*, No. 3:17-CV-3347-N-BH, 2018 WL 3617963 (N.D. Tex. July 30, 2018) ("[T]he dismissal of improper defendants is typically analyzed under Fed. R. Civ. P. 12(b)(6).").

---

[11]  This might also explain why Plaintiffs have not argued that the revocations were final agency actions reviewable under the APA.  *See, e.g.*, Dkt. No. 9 at 11-13 (claiming that the COC decisions were final agency actions without making a similar argument about the passport revocations). Dkt. No. 11 at 11-13 (same).

[12]  As discussed above, under *Hinojosa v. Horn*, determining whether § 1503 provides Plaintiffs with an adequate, alternative remedy requires a fact-intensive, "case-specific evaluation."  *Supra* at p. 24-25 (citing *Hinojosa*, 896 F.3d 305, 310−11).

Although Defendants have also argued for the dismissal of Plaintiffs' requests for injunctive relief under the DJA, their argument is fatally dependent upon the dismissal of Plaintiffs' APA claims.  That is, Defendants' argument is limited to asserting: (1) that § 1503 only provides for declaratory relief, not injunctive relief; and (2) Plaintiffs may only proceed under § 1503(a).  Dkt. No. 10 at 7-8.  Because Plaintiffs have asserted a cause of action under the APA, Defendants have failed to demonstrate that Plaintiffs' claims for injunctive relief are subject to dismissal.

## IV.  Recommendation

It is recommended that the Court **DENY** Defendants' Motion to Dismiss.

## V.  Notice to the Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **4th** day of February, 2021, at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**